# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

FALEKA NIKELA UNDERWOOD, SR.,

              **Defendant.**

1:16-cr-306-WSD-2

## OPINION AND ORDER

This matter is before the Court on Defendant Faleka Nikela Underwood, Sr.'s ("Defendant") Objections [51] to Magistrate Judge John K. Larkins, III's Report and Recommendation [48] ("R&R"). Magistrate Judge Larkins recommends that Defendant's Motion to Suppress Statements [20] and Motion to Sever Counts [21] be denied.

## I. BACKGROUND

On September 6, 2016, a federal grand jury returned an indictment charging Defendant with distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Three); possession of ammunition by a convicted felon, in violation of

18 U.S.C. § 922(g)(1) (Count Six); and possession of a firearm by a convicted

felon, in violation of 18 U.S.C. § 922(g)(1) (Count Eight).  (Indictment [1]).[1]

On November 15, 2016, Defendant filed his Motion to Suppress and Motion

to Sever.  In his Motion to Suppress, Defendant seeks to suppress testimony he

gave in his defense at a May 27, 2016, probable cause hearing in the Magistrate

Court of Coweta County, Georgia (the "Coweta County Hearing"), on state

charges of theft by receiving.  At the Coweta County Hearing, Defendant testified

that he dealt marijuana and possibly handled a bullet that was recovered in a stolen

firearm.  These statements form the basis for the charges in Counts Three and Six

of the Indictment in this case.  Defendant also testified that, on November 10,

2015, he wrestled a firearm away from his son, his son fled, and Defendant was

arrested for being a felon in possession of a firearm.  These statements relate to the

crime charged in Count Eight of the Indictment in this case.  Defendant argues that

his testimony must be suppressed because he did not knowingly or intelligently

waive his Fifth Amendment rights because his attorney, Jacoby Hudson, was

---

[1]     The Indictment also charges codefendant Deshawn Evans Batchelor with
two counts of distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1)
(Counts One and Two); possession of ammunition by a convicted felon, in
violation of 18 U.S.C. § 922(g)(1) (Count Four); possession of a firearm by a
convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five); and possession
with intent to distribute cocaine, methamphetamine and marijuana, in violation of
21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(1)(D).  It does not appear that
Batchelor has been arrested on the charges in this case.

ineffective when he failed to properly advise Defendant of the risks of testifying and he allowed or encouraged Defendant to testify.

In his Motion to Sever, Defendant contends that Count Eight, the felon in possession of a firearm charge based on the November 10, 2015, incident with his son, is not part of the same act or transaction, and is not of the same or similar character, as Counts Three and Six, which arise out of Underwood's alleged sale of marijuana and handling of a bullet in July 2016.

On February 17, 2017, Magistrate Judge Larkins conducted an evidentiary hearing on Defendant's Motions. Testimony was presented from Officer Caleb Jackson ("Officer Jackson") of the College Park Police Department, Investigator Mark Callahan ("Investigator Callahan") of the Coweta County Sheriff's Office, and Jacoby Hudson ("Mr. Hudson"), Defendant's attorney in the Coweta County Case. The Government also introduced into evidence a video recording of the May 27, 2016, Coweta County Hearing. (Gov't Ex. 5). Following the evidentiary hearing, the parties filed their post-hearing briefs [40], [41], [43].

On June 8, 2017, Magistrate Judge Larkins issued his R&R, recommending that Defendant's Motion to Suppress and Motion to Sever be denied.

On June 22, 2018, Defendant timely filed his Objections. Defendant objects to the Magistrate Judge's conclusion that Defendant knowingly and intelligently

waived his rights. Defendant argues that he lacked "full awareness of the consequences of the decision to abandon his right to remain silent," including because Mr. Hudson provided ineffective assistance at the probable cause hearing. (Obj. at 14). Defendant objects also to the Magistrate Judge's conclusion that Defendant failed to show that joinder of Counts Three, Six and Eight would be so prejudicial that severance is required.

### A. November 10, 2015, Arrest in College Park, Georgia

On November 10, 2015, Officer Jackson responded to a report of gunshots fired at an apartment complex in College Park, Georgia. (Tr. at 23). Defendant lived at the apartment complex. (Id.). Officer Jackson asked Defendant what happened, and Defendant responded that he and his son were fighting and his son pulled out a gun, so Defendant wrestled the gun from him and fired two shots into the air to scare him. (Tr. at 27, 30, 44). Officer Jackson arrested Defendant for discharging a firearm within the city limits and for being a felon in possession of a firearm. (Tr. at 34-35).

### B. Coweta County Case

On July 18, 2015, a Georgia State Patrol trooper observed a Silver Nissan Armada speeding on I-85 in Coweta County, Georgia. (Gov't Ex. 5). When the trooper attempted to pull over the Armada, the vehicle fled and a high-speed chase

ensued.  The Armada eventually stopped, and the driver and one passenger were arrested.  At least three other passengers fled on foot.  (Id.).

Investigator Callahan processed the Armada and determined that the vehicle was linked to a series of automobile and gun shop thefts that he had been investigating.  (Id.).  He dusted the Armada for fingerprints and Defendant's fingerprints matched those taken from the door jamb on the driver's side of the vehicle.  (Id.).

A firearm was also recovered from the Armada, and law enforcement officers determined that the firearm was one of several firearms that were stolen during a series of gun shop burglaries.  (Id.).  Some of the other firearms and ammunition stolen during the same burglary were recovered pursuant to a July 27, 2015, search warrant executed at a College Park apartment.  Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") found Defendant's fingerprint on a bullet that was found in one of the firearms recovered from the search of the apartment.

On May 5, 2016, Investigator Callahan obtained a warrant from the Coweta County Magistrate Court for Defendant's arrest on charges of theft by receiving the Armada.  (Id.).  Because Defendant's fingerprints were found on the Armada and on the bullet inside the stolen firearm, Investigator Callahan concluded that

Defendant was involved in the vehicle and gun theft ring and that he was one of the passengers who fled law enforcement after the high-speed chase. (Id.).

On May 23, 2016, Defendant was arrested pursuant to the Coweta County warrant and held in custody at the Coweta County jail. (Tr. at 72). On May 27, 2016, Defendant, represented by Mr. Hudson, appeared before a Coweta County Magistrate for a probable cause hearing. (Tr. at 58, 87; Gov't Ex. 4). At the beginning of the hearing, the court advised Defendant that he had the Fifth Amendment right to remain silent and that if Defendant had information to share with the court, he should do so through his attorney in order to protect that right. (Gov't Ex. 4 at 5:09). Defendant indicated that he understood. (Id.).

Investigator Callahan testified about the facts contained in the arrest warrant, including that he found Defendant's fingerprints in the Armada, that Defendant had multiple arrests, including for theft and gun-related offenses, and that he believed Defendant was one of the men who fled from the Armada and escaped arrest. Investigator Callahan also testified that the ATF was investigating the gun shop burglaries and that the ATF conducted the search of the apartment that produced ammunition, stolen during one of the gun shop burglaries, on which Defendant's fingerprint was found. (Id. at 8:00-10:15).

During Investigator Callahan's testimony, Defendant indicated to

Mr. Hudson that he believed Investigator Callahan was lying and he wanted to

testify. (Tr. at 74-75, 77-78, 91-92). Mr. Hudson told Defendant that any

testimony would have to be truthful "because there's going to be a record." (Tr. at

74). Mr. Hudson told Defendant:

> I went over his Fifth Amendment right. I told him, I said, you've got
> a right to remain silent. And I actually even – because I developed a
> comfort level with him, I told him, I said, You've got a right to not
> testify. I said, however, there are no witnesses here. I don't have any
> witnesses on your defense who could bring the defense. So I said,
> Mr. Underwood, the best way you can tell your story, is tell your story
> to the judge. And at that point he was, like – I was, like, are you sure
> you want to testify? Based on everything he said, I'm sure.

(Tr. at 79). Mr. Hudson and Defendant "talked at length about" what happens

when a defendant waives his rights, including that his statements can be used

against him in any criminal context. (Tr. at 91). Mr. Hudson stated that it was

Defendant's decision to testify, and then "[Mr. Hudson] verified it . . . [b]ecause

based on what [Mr. Hudson] knew about the case . . . [Mr. Hudson] knew that

[Defendant's] testimony couldn't hurt him." (Tr. at 91).

Before his testimony began, the magistrate advised Defendant he would

waive his Fifth Amendment rights by testifying, and he would be "wide open" on

cross-examination. (Gov't Ex. 4 at 26:55-27:03). The magistrate expressed his

surprise at Defendant's decision to testify and stated, "I can't believe you're going to do this, but we'll see." (Id. at 27:03-06). The magistrate told Defendant:

> The Court:   Now, before Mr. Hudson starts, Mr. Underwood, I'm going to ask you . . . I hope I advised you that you have a Fifth Amendment right to remain silent before we started the hearing. And you understand that's a shield that gives protection to you that [the prosecutor] can't ask you any questions and I can't ask you any questions and you can invoke that Fifth Amendment privilege but you can also waive that privilege. And once you've waived it, you don't get it back. Did Mr. Hudson explain that to you?
>
> Defendant:   Yes sir.
>
> The Court:   And you believe it's in your best interest to testify to provide some defense for yourself?
>
> Defendant:   Yes, I really do.

(Gov't Ex. 4 at 27:20-27:58). Throughout their exchange, Defendant appeared attentive and engaged, nodding his head and indicating that he understood what the magistrate told him. (Id.).

On direct examination, Defendant testified that his fingerprints were found on the Armada because he probably sold marijuana to individuals inside the vehicle. Mr. Hudson asked Defendant if he sometimes sells marijuana, and Defendant indicated that he does. (Id. at 29:25-29:33; see also 30:40-30:52). Defendant also confirmed that he sells marijuana to people he does not know and that he likely sold marijuana to individuals in the Armada at issue. (Id. at

29:33-30:05).  Defendant described how his fingerprints may have gotten on the

Armada during a drug transaction.  (Id. at 30:05-30:28; 32:10-32:27; 36:30-36:50).

Mr. Hudson also asked Defendant how his fingerprints may have been found

on the bullet referred to in the warrant.  Defendant testified that the bullet was

found in an apartment in the complex in which he lives, that the apartment was

used as a drug den and "trap house," and that he might have picked up the bullet

while he was at that apartment to pick up additional marijuana to sell.  (Id. at

33:05-35:10; 36:05-36:30).

Defendant also testified that, on November 10, 2015, he was arrested for

being a felon in possession of a firearm.  Defendant stated that, during a fight with

his son at Defendant's apartment complex, his son dropped the firearm and ran.

Defendant stayed and was charged with possessing the firearm.  (Id.

at 35:30-35:42; see also 43:00-44:15).

On cross-examination, Defendant again admitted to selling marijuana and

buying it at his apartment complex.  (Id. at 37:30-38:00).  Defendant again testified

that he possibly picked up the bullet, but he denied that he possessed a firearm.

(Id. at 38:20-39:00).  Defendant also repeated his belief that his fingerprints were

on the Armada because he likely touched the vehicle during a drug sale.  (Id. at

39:03-39:12).  Defendant stated that he could not recall when he may have sold

drugs to people in the Armada because, he testified, "I sell marijuana to people every day."  (Id. at 42:20-42:37).

At the end of the Coweta County Hearing, the magistrate concluded that the prosecution had not met its burden to establish probable cause to support the charge of theft by receiving stolen property.  (Id. at 1:16:10-30).

## II.    LEGAL STANDARD

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted).  With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

## III.  DISCUSSION

### A.  Motion to Suppress Statements

The Fifth Amendment provides that "no person shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.  Prior to any questioning, a person in custody must be advised that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the assistance of counsel.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Warnings under Miranda "are required before any statement may be admitted . . . [that was] elicited from a person in custody through interrogation."  Endress v. Dugger, 880 F.2d 1244, 1248 (11th Cir. 1989).

A person can waive his Fifth Amendment privilege only if the waiver is voluntary, knowing and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

Magistrate Judge Larkins concluded that Defendant's decision to waive his Fifth Amendment privilege was voluntary because Defendant does not argue, and there is no evidence to support, that the Government took any coercive action against Defendant to make him testify. (R&R at 10-11). Defendant did not object to the Magistrate Judge's conclusion that his waiver was voluntary, and the Court finds no plain error in this conclusion. See Colorado v. Spring, 479 U.S. 564, 574 (1987) ("Absent evidence that [the suspect's] will was overborne and his capacity for self-determination critically impaired because of coercive police conduct, his Fifth Amendment privilege was voluntary under this Court's decision in Miranda."); Singleton v. Thigpen, 847 F.2d 668, 670 (11th Cir. 1988), cert. denied, 488 U.S. 1019 (1989) (A statement is voluntary if "the defendant makes an independent and informed choice of his own free will.").

Defendant objects to the Magistrate Judge's conclusion that Defendant knowingly and intelligently waived his rights. Defendant argues that he lacked "full awareness of the consequences of the decision to abandon his right to remain silent," including because Mr. Hudson provided ineffective assistance at the probable cause hearing. (Obj. at 14). The Court disagrees.

It is well-settled that "[t]he Constitution does not require that a criminal defendant know and understand every possible consequence of a waiver of the

Fifth Amendment privilege." <u>Spring</u>, 479 U.S. at 574 (citing <u>Burbine</u>, 475 U.S. at 422; <u>Oregon v. Elstad</u>, 470 U.S. 297, 316-317 (1985)). Rather,

> [t]he Fifth Amendment's guarantee is both simpler and more fundamental: A defendant may not be compelled to be a witness against himself in any respect. The <u>Miranda</u> warnings protect this privilege by ensuring that a suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time. The <u>Miranda</u> warnings ensure that a waiver of these rights is knowing and intelligent by requiring that the suspect be fully advised of this constitutional privilege, including the critical advice that whatever he chooses to say may be used as evidence against him.

<u>Spring</u>, 479 U.S. at 574. To show that a defendant's waiver of his Fifth Amendment privilege was knowingly and intelligently made, the Government must show that the defendant "understood that he had the right to remain silent and that anything he said could be used as evidence against him." <u>Id.</u>

The evidence is that Defendant was advised of his Fifth Amendment rights at least three (3) times: by the magistrate at the beginning of the probable cause hearing, by Mr. Hudson before Defendant took the stand, and again by the magistrate before Defendant testified. At the beginning of the hearing, the magistrate advised Defendant that he had the Fifth Amendment right to remain silent and that if Defendant had information to share with the court, he should do so through his attorney in order to protect that right. (Gov't Ex. 4 at 5:09). Defendant indicated that he understood. (<u>Id.</u>).

When Defendant told Mr. Hudson that he wanted to testify, Mr. Hudson told Defendant that any testimony would have to be truthful "because there's going to be a record." (Tr. at 74). Mr. Hudson and Defendant "talked at length about" what happens when a defendant waives his rights, including that his statements can be used against him in any criminal context. (Tr. at 91). Defendant again stated that he wished to testify.

The magistrate then advised Defendant that he would waive his Fifth Amendment rights by taking the stand, and that he would be "wide open" on cross-examination. (Gov't Ex. 4 at 26:55-27:03). The magistrate again explained Defendant's Fifth Amendment privilege, confirmed that Mr. Hudson also explained it to Defendant, and confirmed that Defendant believed it was in his best interest to testify. (Id. at 27:20-27:58). Throughout their exchange, Defendant appeared attentive and engaged, nodding his head and indicating that he understood what the magistrate told him. (Id.). This record supports that Defendant understood that he had the right to remain silent and that his testimony could be used against him.[2]

---

[2] That Defendant appears to have had previous encounters with law enforcement further supports that Defendant understood his rights, including his right to remain silent and that his testimony could be used against him, at the time he chose to testify at the Coweta County Hearing. (See Gov't Ex. 4 at 8:00-8:45)

Although Defendant concedes that "the warning by the judge [at the Coweta County Hearing] was accurate," Defendant argues that Mr. Hudson's advice was not, and Mr. Hudson "undermined and voided out any warning given by the court." (Obj. at 14). The record does not support Defendant's argument that Mr. Hudson gave him incorrect advice. At the evidentiary hearing in this case, Mr. Hudson testified that it was Defendant's decision to testify at the Coweta County Hearing, and that Mr. Hudson "verified it" because Mr. Hudson "knew that [Defendant's] testimony couldn't hurt him." (Tr. at 91). Mr. Hudson did not, as Defendant asserts, tell Defendant that "nothing he said could possibly hurt him." (Br. in Supp. of Mot. to Suppress [40] at 7; Obj. at 6).[3]

Defendant also relies on Mr. Hudson's statement to Defendant that "the best way [Defendant] can tell [his] story, is tell [his] story to the judge," to support that Mr. Hudson influenced him to testify. (Tr. at 79). Defendant reads Mr. Hudson's statement out of context. Mr. Hudson testified that, after Defendant told him that

---

(Investigator Callahan testified that Defendant had approximately 28 previous arrests, including for theft and gun-related offenses).

[3]     Even if Mr. Hudson told Defendant that his testimony could not hurt him, after Mr. Hudson's discussion with Defendant, the magistrate again advised Defendant of his Fifth Amendment privilege, including that he would be "wide open" on cross-examination. Defendant indicated that he understood his rights and thought it was in his best interest to testify. (Gov't Ex. 4 at 26:55-27:58).

Investigator Callahan was lying and Defendant wanted to testify, Mr. Hudson

discussed with Defendant his Fifth Amendment rights:

> I told him, I said, you've got a right to remain silent. And I actually
> even – because I developed a comfort level with him, I told him, I
> said, You've got a right to not testify. I said, however, there are no
> witnesses here. I don't have any witnesses on your defense who could
> bring the defense. So I said, Mr. Underwood, the best way you can
> tell your story, is tell your story to the judge. And at that point he
> was, like – I was, like, are you sure you want to testify? Based on
> everything he said, I'm sure.

(Tr. at 79). In view of Defendant's belief that Investigator Callahan was lying and

Defendant's assertion that he wanted to testify, Mr. Hudson was explaining to

Defendant his options: Defendant has the right to remain silent and the right not to

testify, but because there were no witnesses who Mr. Hudson could call to support

Defendant's version of events, the "best" way for Defendant to tell his side of the

story, is to "tell [his] story to the judge."  After explaining his options, Mr. Hudson

again asked Defendant if he was sure that he wanted to testify.  There is no

evidence to support that Mr. Hudson advised Defendant to testify or not to testify.

The record is further that after this conversation, the magistrate plainly told

Defendant about the risk of waiving his Fifth Amendment privilege and that any

testimony he gave could be used against him.  The Court finds that Defendant

understood his Fifth Amendment rights, and he knowingly and intelligently waived

his right to remain silent when he testified at the May 27, 2016, Coweta County

Hearing.[4]

---

[4]     Defendant relies on <u>United States v. McCoy</u>, 215 F.3d 102 (D.C. Cir. 2000), and <u>Finch v. Vaughn</u>, 67 F.3d 909 (11th Cir. 1995), to support that "bad advice from an attorney can undermine a waiver" of the defendant's constitutional rights. In <u>McCoy</u>, the court found that defendant's plea was not voluntary and intelligent because counsel miscalculated the defendant's sentencing guideline range and defendant pled guilty believing he was facing a much shorter sentence.  <u>McCoy</u>, 215 F.3d at 107.  In <u>Finch</u>, the Eleventh Circuit concluded the defendant's guilty plea was not voluntary because his attorney and the trial judge incorrectly told him that his state and federal sentences would run concurrently, when they were required to run consecutively.  <u>Finch</u>, 67 F.3d at 914.  These cases address the consequences a defendant must understand when deciding whether to enter a guilty plea.  They do not address the level of understanding required where, as here, the defendant is considering whether to waive his Fifth Amendment right to remain silent.  <u>Compare</u> <u>Finch</u>, 67 F.3d at 914 ("For a guilty plea to be entered knowingly and intelligently, the defendant must have not only the mental competence to understand and appreciate the nature and *consequences* of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the *legal options and alternatives that are available*.") (emphasis in original) <u>with</u> <u>Spring</u>, 479 U.S. at 574 (To show that a defendant's waiver of his Fifth Amendment privilege was knowing and intelligent, the Government must show that the defendant "understood that he had the right to remain silent and that anything he said could be used as evidence against him.").

        Even if <u>McCoy</u> and <u>Finch</u> apply, there is no evidence to support that Mr. Hudson's advice to Defendant was incorrect or Defendant did not understand the consequences of his decision to testify at the Coweta County Hearing.  <u>See</u> <u>supra</u>.  The record supports that Defendant was properly advised of, and understood, his Fifth Amendment rights, including that he had the right to remain silent and that his testimony could be used against him, and Defendant knowingly and intelligently waived those rights.  <u>McCoy</u> and <u>Finch</u> do not require otherwise.

        The Court notes Mr. Hudson thoroughly questioned Investigator Callahan about the facts alleged in the warrant application and Investigator Callahan discussed, in detail, his coordination with the ATF during his investigation.  (<u>See, e.g.</u>, Gov't Ex. 4 at 9:00-9:30; 13:00-13:40; 20:15-20:25; 22:30-23:00).  This

After a *de novo* review, the Court finds that Defendant voluntarily,

knowingly and intelligently waived his Fifth Amendment rights when he testified

at the May 27, 2016, probable cause hearing. Defendant's statements at the

probable cause hearing were not made in violation of Defendant's rights under the

Fifth Amendment, and Defendant's objection is overruled.

B.      Motion to Sever Counts

Rule 8(a) of the Federal Rules of Criminal Procedure allows for the joinder

of offenses in an indictment returned against a defendant. Rule 8(a) provides:

> The indictment or information may charge a defendant in separate
> counts with 2 or more offenses if the offenses charged—whether
> felonies or misdemeanors or both—are of the same or similar
> character, or are based on the same act or transaction, or are connected
> with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). Rule 14 of the Federal Rules of Criminal Procedure allows

severance. It provides:

> If the joinder of offenses or defendants in an indictment, an
> information, or a consolidation for trial appears to prejudice a
> defendant or the government, the court may order separate trials of
> counts, sever the defendants' trials, or provide other relief that justice
> requires.

Fed. R. Crim. P. 14.

---

undercuts Defendant's assertion that Mr. Hudson provided ineffective assistance
and was unprepared for the hearing because he did not obtain a copy of the warrant
and therefore was "oblivious to the possibility of other charges" and that the ATF
was actively investigating the case. (Obj. at 3).

"Rule 8(a) is broadly construed in favor of the initial joinder."  United States v. Dominquez, 226 F.3d 1235, 1238 (11th Cir. 2000).  Charges, however, may be severed if joinder prejudices the defendant.  Fed. R. Crim. P. 14(a).  Relief under Rule 14 is available where there is a showing that a joint trial will cause the defendant undue prejudice.  United States v. Marszalkowski, 669 F.2d 655 (11th Cir. 1982); see also United States v. Buchanan, 930 F.Supp. 657, 667 (D. Mass. 1996) (substantial prejudice required for severance).  The burden on the defendant to show that he will suffer prejudice is a heavy one.  United States v. Hogan, 986 F.2d 1364, 1375 (11th Cir. 1993).  Claimed prejudice can often be addressed by a court by appropriate limiting instructions to assure a jury will consider the charge sought to be severed separately and to not allow evidence or commission of the separate crime to be used in reaching a verdict on the other charge or charges for which the evidence is not relevant.  United States v. Silien, 825 F.2d 320, 323 (11th Cir. 1987).

Counts Three and Six, which respectively charge Defendant with distributing marijuana and possession of ammunition by a convicted felon, arise out of Underwood's alleged sale of marijuana and handling of a bullet in July 2016.  Count Eight, which charges Defendant with possession of a firearm by

a convicted felon, is based on a November 10, 2015, incident in which Defendant wrestled a firearm away from his son.

Magistrate Judge Larkins concluded that joinder is proper because the firearm possession and the ammunition possession charges are of a similar class and character. Because both charges allege violations of 18 U.S.C. § 922(g)(1), the elements of each offense are nearly identical. Defendant did not object to the Magistrate Judge's conclusion that joinder is proper, and the Court finds no plain error in this conclusion. See United States v. Quilling, 261 F.3d 707, 714 (7th Cir. 2001) (affirming denial of motion to sever charges of being a felon in possession of ammunition and a felon in possession of a firearm).

Defendant objects to the Magistrate Judge's conclusion that Defendant failed to show that joinder would be so prejudicial that severance is required. Defendant argues that a jury considering the felon in possession of a firearm charge would not normally hear evidence that Defendant was involved in dealing marijuana in a separate and unrelated incident, and "the entire story about the stolen car and the gun store robbery is completely irrelevant to the felon in possession of a firearm charge." (Obj. at 16).

The Court finds the offenses are of a similar class and appropriate preliminary instructions and the charge before deliberations can adequately advise

the jury that they must consider the charges separately and require the Government

to prove each charge beyond a reasonable doubt.[5]  The Court concludes that

Defendant's claimed prejudice can be addressed by instructing the jury that each

count is to be considered separately.  See Silien, 825 F.2d at 323; United States

v. Walser, 3 F.3d 380, 387 (11th Cir. 1983) ("[I]f the possible prejudice may be

cured a cautionary instruction severance is not required."); see also Eleventh

Circuit Pattern Jury Instructions (Criminal) B10.4 ("You must consider each crime

and the evidence relating to it separately.").

 After a *de novo* review, the Court finds that Defendant fails to show that

joinder of Counts Three, Six and Eight will cause Defendant undue prejudice, and

Defendant's objection is overruled.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Faleka Nikela

Underwood, Sr.'s Objections [51] to the R&R are **OVERRULED**.

---

[5]    Defendant's testimony at the Coweta County Hearing covered issues related to all three charges against Defendant in this case.  The areas of examination overlap considerably, and, even if trial in this case was bifurcated, the testimony would be introduced at both trials.  That the evidence would be overlapping supports that severance would impede judicial efficiency.  The testimony from the Coweta County Hearing shows that it would be difficult, if not impossible, to excerpt completely Defendant's testimony regarding the marijuana distribution and possession of ammunition, from his testimony regarding possession of a firearm.

**IT IS FURTHER ORDERED** that Magistrate Judge John K. Larkins, III's Report and Recommendation [48] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements [20] and Motion to Sever Counts [21] are **DENIED**.

**SO ORDERED** this 5th day of July, 2017.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE